## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Jason Q. Lucas, | : | |
| | : | |
| Plaintiff, | : | No. 4:09-cv-02031-JFM-SF |
| | : | |
| v. | : | |
| | : | Honorable James F. McClure, Jr., J. |
| | : | |
| Warden Ralph B. Reish, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |

### Memorandum of Law in Support of Defendant
### Deputy Warden John N. Conrad's Motion to Dismiss
### Plaintiff's Complaint Pursuant to FED. R. CIV. P. 12(b)(6)

*AND NOW* comes Defendant Deputy Warden John N. Conrad (hereinafter "Moving Defendant" or "Warden Conrad"), by and through his undersigned counsel, and submits this Memorandum of Law in Support of Moving Defendant's Motion to Dismiss Plaintiff's Complaint Pursuant to FED. R. CIV. P. 12(b)(6).

## I.    **Introduction**

On October 20, 2009, Plaintiff filed a Complaint in this Court purporting to set forth causes of action against Warden Ralph B. Reish, Mary Jo Christiano, Warden Conrad, and John Doe Correctional Officers. That Complaint pleads claims against Defendants under 42 U.S.C. § 1983; the 4th, 8th, and 14th Amendments to the United States Constitution; and Pennsylvania law. Warden

Conrad waived service of the Complaint on April 15, 2010. Warden Conrad now moves to dismiss Plaintiff's Complaint pursuant to FED. R. CIV. P. 12(b)(6) for failure to state a claim for which relief may be granted and for failure to exhaust administrative remedies.

## II.    Factual Background at it Applies to Moving Defendant[1]

On April 18, 2007, Plaintiff was incarcerated in the Northumberland County Prison on a probation violation. (Plaintiff's Complaint, attached hereto as Exhibit "A", at ¶ 9). Prior to his incarceration, Plaintiff was receiving psychiatric care. (Exhibit "A", at ¶ 48). Plaintiff requested a psychiatric evaluation from Warden Reish during his incarceration. (Exhibit "A", at ¶ 53). Plaintiff's mother requested a psychiatric evaluation from Warden Reish and from the "Commissioners". (Exhibit "A", at ¶ 55). Following a meeting with Counselor Mary Jo Christiano, Ms. Christiano indicated that Plaintiff did not need psychiatric care. (Exhibit "A", at ¶ 56). Plaintiff did not receive psychiatric care while incarcerated. (Exhibit "A", at ¶ 57).

Plaintiff also asserts the following conclusions of law:

62.    The failure to treat or evaluate Lucas' psychiatric condition constituted deliberate indifference to a serious medical condition.

---

[1] For the purposes of a motion filed pursuant to FED. R. CIV. P. 12(b)(6), the Court must accept the factual allegations contained in the Complaint as true. *See e.g. Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3rd Cir. 2008). Nothing contained in these moving papers shall be construed as an admission to any such allegations.

63. The failure to evaluate or treat Lucas' psychiatric condition resulted in unnecessary pain and suffering.

64. During Lucas' incarceration at Northumberland County Prison, the failure of the Prison to treat Lucas for his psychiatric condition was the direct and proximate cause of any misbehaviors that resulted in penalties to Lucas.

65. The penalties, in turn, caused pain, suffering, humiliation, and a worsening of his psychiatric condition.

66. The failure to evaluate or treat Lucas' psychiatric condition resulted in pain, suffering, humiliation, and a worsening of his psychiatric condition.

(Exhibit "A").

Plaintiff also alleges that, on October 18, 2007, he was placed in "The Hole" after intentionally damaging a toilet and sink. (Exhibit "A", at ¶ 11). Plaintiff alleges that, immediately prior to his transfer to The Hole, he was subjected to excessive force by the John Doe corrections officers through the use of "OC" (oleoresin capsicum) spray and a "shock shield".[2] (Exhibit "A", at ¶¶ 15-16). Plaintiff alleges that, after the transfer to The Hole, he was not permitted sufficient time to shower, but was given clean boxer shorts later in the day. (Exhibit "A", at ¶¶ 24, 35).

---

[2] While Plaintiff characterizes OC spray as "a more severe spray than 'Mace'", oleoresin capsicum spray is legal in all fifty states, and can be purchased without any form of license in Pennsylvania. A "shock shield" is a combination of a polycarbonate riot shield and a stun gun, commonly utilized by police forces around the country.

Plaintiff alleges that, while in The Hole, he was subjected to unpleasant conditions of confinement, including:

a.    Being placed in a cell with six (6) other inmates (Exhibit "A", at ¶ 32);

b.    Having to sleep on a dirty concrete floor (Exhibit "A", at ¶ 36);

c.    Having to sleep in a cell with mold on the ceiling (Exhibit "A", at ¶ 39);

d.    Having to sleep in a cell in which a fellow inmate smeared feces on the wall (Exhibit "A", at ¶¶ 37-38); and

e.    Having to sleep in a cell in which there were cockroaches, centipedes, and other insects.  (Exhibit "A", at ¶ 41).

Plaintiff alleges that, while he was in The Hole, the cell failed to pass inspection. (Exhibit "A", at ¶ 44).

**III.    Legal Argument**

As Plaintiff's Complaint fails to set forth sufficient facts to state a claim against Moving Defendant for which relief may be granted, the Complaint must be dismissed pursuant to FED. R. CIV. P. 12(b)(6).

### a.    *Standard of Review for a Motion to Dismiss Under FED R. CIV. P. 12(b)(6)*

Federal Rule of Civil Procedure 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to

relief." FED. R. CIV. P. 8(a)(2).  Although this pleading standard does not require "detailed factual allegations, … it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1949, 139 L.Ed.2d 868 (2009), *citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).  A complaint that offers nothing more than "'labels and conclusions[,]. . . a formulaic recitation of the elements of a cause of action . . .[or] naked assertion[s]' devoid of 'further factual enhancement'" does not meet this standard and should be dismissed. *Iqbal*, 129 S.Ct. at 1949, *citing Twombly*, 550 U.S. at 557.  Thus, to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 556 (retiring the "no set of facts" test of *Conley v. Gibson*, 355 U.S. 41, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)).

Under the *Twombly/Iqbal* paradigm, a Court must engage in a two-step inquiry to determine the sufficiency of the factual matter alleged.  First, the Court must identify and disregard allegations that are nothing more than legal conclusions and, therefore, "not entitled to the assumption of truth." *Iqbal*, 129 S.Ct. at 1950.  Indeed, as both *Twombly* and *Iqbal* made clear, a Court need not consider allegations in the Complaint that constitute unsupported legal conclusions, legal conclusions couched as factual allegations, or conclusory factual

allegations devoid of any reference to actual events. *See Twombly*, 550 U.S. at 556 (explaining that "on a motion to dismiss, courts 'are not bound to accept as true a legal conclusion couched as a factual allegation'"), *quoting Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986); *Bright v. Westmoreland County*, 380 F.3d 729, 735 (3rd Cir. 2004) ("In ruling on a Rule 12(b)(6) motion, courts can and should reject legal conclusions, unsupported conclusions, unwarranted references, unwarranted deductions, footless conclusions of law, and sweeping legal conclusions in the form of actual allegations.")     Further, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949.

The Court then must identify the non-conclusory, well-pleaded factual allegations, "assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." *Id.* at 1950.  The facts set forth in the complaint must show that a claim is actually plausible, not merely possible:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (internal citations omitted). If the factual allegations, assumed to be true, are consistent with a claim for relief, that claim nevertheless must be dismissed if the facts are equally consistent with a finding of no liability. *See Id.*

Applying this two-step inquiry, the Supreme Court in *Iqbal* considered a *Bivens* claim brought by a federal detainee against John Ashcroft, the former Attorney General, and Robert Mueller, the Director of the Federal Bureau of Investigations, for alleged constitutional injuries he suffered while in federal custody. *See Id.* at 1942. Both defendants moved to dismiss Iqbal's claim on the basis of qualified immunity. *See Id.* Noting that *Bivens* claims are the "federal analog to suits brought against state officials under Rev. Stat. § 1979, 42. U.S.C. § 1983," the Court applied § 1983 precedent to determine whether Iqbal had pled sufficient facts to hold Ashcroft and Mueller personally liable for his alleged constitutional injuries. *Id.* at 1948 (*internal quotation omitted*). The Court held that he did not. *See Id.* at 1954.

In so holding, the Court found that Iqbal's allegations that the defendants "'knew of, condoned, and willfully and maliciously agreed to subject [him]' to harsh conditions of confinement 'as a matter of policy'" and that Ashcroft "was the 'principal architect' of this invidious policy . . . [and] Mueller was 'instrumental' in adopting and executing it" were exactly the type of conclusory allegations that a

court should disregard when considering a motion to dismiss. *Id.* at 1951. The Court characterized Iqbal's allegations against Ashcroft and Mueller as "'a formulaic recitation of the elements' of a constitutional discrimination claim." *Id.*, *quoting Twombly*, 550 U.S. at 555.

In addition, the Court need not "credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion School District*, 132 F.3d 902, 906 (3rd Cir. 1997). In ruling on a 12(b)(6) motion, Courts consistently reject "legal conclusions," "unsupported conclusions," "unwarranted inferences," "unwarranted deductions," "footless conclusions of law," and "legal conclusions cast in the form of actual allegations." *Id.* at 906, n. 8. A Court is not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations. *Baraka v. McGreevy*, 481 F. 3d 187, 211 (3rd Cir. 2007). Plaintiff's claim against Moving Defendant, as sent forth in Plaintiff's Complaint, fails to meet the pleading standard established by the Supreme Court. Accordingly, Plaintiff's claim against Moving Defendant should be dismissed with prejudice.

### b. *Plaintiff's Complaint Fails to State a Claim against Moving Defendant for which Relief may be Granted*

Count 2 of Plaintiff's Complaint attempts to set forth a claim against Moving Defendant under 42 U.SC. § 1983 for deliberate indifference to medical needs, excessive force, and inhumane conditions of confinement. However, the

facts pled by Plaintiff are simply insufficient to suggest any liability.  Pursuant to

42 U.S.C. § 1983:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State. . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983 (1988).  Section 1983 "is not itself a source of substantive rights,

but a method for vindicating federal rights elsewhere conferred."  *Baker v.*

*McCollan*, 443 U.S. 137, 144 fn.3, 99 S. Ct. 2689, 61 L. Ed. 2d 433 (1979).  Thus,

in order to establish a claim under § 1983, Plaintiff must plead facts to establish

that the conduct committed by one acting under color of state law deprived the

plaintiff of "rights, privileges, or immunities guaranteed by the Constitution."

*Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L. Ed. 2d 420 (1981).

Individuals may not be found liable under § 1983 pursuant to a *respondeat*

*superior* theory of liability.  *Polk County v. Dodson*, 454 U.S. 312, 325, 102 S. Ct.

445, 70 L. Ed. 2d 509 (1981).  Rather, a defendant in a supervisory role "must have

personal involvement in the alleged wrongs."  *Rode v. Dellarciprete*, 845 F.2d

1195, 1207 (3rd Cir. 1988).

> To hold a supervisor liable on a deliberate indifference theory under § 1983, a plaintiff must demonstrate that either (1) the supervisor failed to adequately respond to a

pattern of past occurrences of injuries like the plaintiff's, or (2) the risk was "so great and so obvious" that the failure of the supervisor to respond alone supports a finding of deliberate indifference. Furthermore, when a prisoner is under medical supervision, absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official ... will not be chargeable with the Eighth Amendment *scienter* requirement of deliberate indifference.

*Gioffre v. County of Bucks*, 2009 U.S. Dist. LEXIS 101894, *9 (E.D. Pa. November 2, 2009) (*internal citations omitted*).

With regard to an alleged lack of medical attention, the United States Supreme Court held in *Estelle v. Gamble*, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976), that a state prisoner subjected to medical malpractice does not automatically have a claim under § 1983. The Court stated that "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.*, at 106. The Supreme Court further addressed this issue in *Farmer v. Brennan*, in which the it held:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk

> of serious harm exists, and he must also draw the
> inference.

*Farmer*, 511 U.S. 825, 837, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994).  Plaintiff

has failed to allege that Moving Defendant ever was made aware of a request for a

psychiatric evaluation.    Instead, he alleges only that Warden Reish and the

"Commissioners" were told of a need for a psychiatric evaluation.  In addition, as

Plaintiff's Complaint admits that he was provided with the psychiatric evaluation

he requested, there is insufficient evidence to push Plaintiff's claims against

Moving Defendant from the merely possible to the actually plausible, and Count 2

must be dismissed.

      As the Third Circuit has held:

> We will distinguish between cases where the complaint
> alleges a complete denial of medical care and those
> alleging inadequate medical treatment.    "Where a
> prisoner has received some medical attention and the
> dispute is over the adequacy of the treatment, federal
> courts are generally reluctant to second guess medical
> judgments and to constitutionalize claims which sound in
> state tort law."

*United States ex rel. Walker v. Fayette County*, 599 F.2d 573, 575 fn. 2 (3rd Cir.

1979) (*quoting, in part Westlake v. Lucas*, 537 F.2d 857, 860 fn. 5 (6th Cir. 1976).

      In *Westlake*, the plaintiff made numerous requests for treatment for a

bleeding ulcer, but was denied any form of care.  The appellate court reversed the

grant of a 12(b)(6) motion to dismiss, holding, "a prisoner states a proper cause of

action when he alleges that prison authorities have denied reasonable requests for medical treatment in the face of an obvious need for such attention where the inmate is thereby exposed to undue suffering or the threat of tangible residual injury." *Westlake*, at 860.

In this case, Plaintiff does not even allege that he was denied treatment. In fact, he alleges the opposite – that he was provided with the evaluation he requested, but that he was not happy with the result. This is precisely the type of case that courts routinely dismiss on the grounds that any actually remedy lies with state tort claims, not allegations of constitutional violations.

With regard to Plaintiff's claim that the conditions in The Hole were "inhumane", such claim must fail. "[D]eficiencies and inadequacies in prison conditions do not necessarily violate the Eighth Amendment. The amendment is violated only where an inmate is deprived of the minimal civilized measure of life's necessities." *Tillery v. Owens*, 907 F.2d 418, 426 (3rd Cir. 1990). When considering whether a claim under the Eighth Amendment reaches the level of a constitutional violation, the Court must look at the facts in context. "A filthy, overcrowded cell and a diet of [unpalatable food] might be tolerable for a few days and intolerably cruel for weeks or months." *Hutto v. Finney*, 437 U.S. 678, 686-87, 98 S. Ct. 2565; 57 L. Ed (1978). In *Hutto*, the Supreme Court upheld a decision by the Eighth Circuit holding that confining inmates to filthy conditions in

punitive isolation cells for more than thirty (30) days constituted cruel and unusual punishment. As courts in the Third Circuit have held, "isolated instances of deficient and uncomfortable conditions of confinement do not constitute cruel and unusual punishment." *Morrison v. Clark*, 1985 U.S. Dist. LEXIS 22, *13 (E.D. Pa. February 27, 1985); *see also Roach v. Kligman*, 412 F. Supp. 521, 527 (E.D. Pa. 1976) (confinement in "cold and leaky" cell for short period does not violate the Eighth Amendment).

Finally, with regard to Plaintiff's claims for excessive force, such claims are barred by the applicable statute of limitation, as set forth below. In addition, Plaintiff had not pled any facts to support a claim for failure to train. The Complaint sets forth only the legal conclusion that, "Deputy Warden Conrad failed to provide adequate training to prison staff to avoid the violations and excesses described above." (Exhibit "A", at ¶ 74). Under *Iqbal*, such use of conclusory pleading is insufficient to state a claim against Moving Defendant.

### c.    *There is no Basis for a Demand for Punitive Damages*

Plaintiff's request for relief includes a request for punitive damages against all Defendants. As the facts alleged against Moving Defendant are insufficient to support a demand for punitive damages, such request must be stricken. Under § 1983, punitive damages are improper unless Plaintiff shows that Moving Defendant's "conduct is shown to be motivated by evil motive or intent, or when it

involves reckless or callous indifference to the federally protected rights of others."
*Rivera v. Algarin*, 2009 U.S. App. LEXIS 19273, *8, fn. 8 (3rd Cir. August 26, 2009) (non-precedential opinion). In cases filed under 42 U.S.C. § 1983, the term "reckless indifference" pertains to the violation of federal law, not the egregiousness of the conduct. *Jackson v. Paparo*, 2002 U.S. Dist. LEXIS 22459, *33 (E.D. Pa. October 28, 2002).

In this case, Plaintiff has not pled sufficient facts to show that Moving Defendant showed malice or reckless disregard for Plaintiff's federally protected rights. Plaintiff doesn't even allege that Plaintiff asked Moving Defendant for a psychiatric evaluation. Plaintiff cannot demonstrate that the Moving Defendant acted with reckless indifference or that he was callously indifferent in his actions towards Plaintiff. Plaintiff continues to rely upon bald assertions, unwarranted inferences, and unsupported conclusions in his Complaint. Such conclusions are not sufficient to establish claims for punitive damages against Moving Defendant, and such claims must be dismissed with prejudice.

### d.    *Moving Defendant is Entitled to a Defense of Qualified Immunity*

Moving Defendant is entitled to qualified immunity for all actions taken in his conduct toward Plaintiff. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a

reasonable person would have known." *Pearson v. Callahan*, 129 S.Ct. 808, 815, 172 L. Ed. 2d 565 (2009). "Because qualified immunity is an immunity from suit rather than a mere defense to liability[,] it is effectively lost if a case is erroneously permitted to go to trial." *Id.* at 815. Accordingly, "we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Id.* The Supreme Court has adopted a two-part test to analyze the defense of qualified immunity:

> First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right. Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was "clearly established" at the time of defendant's alleged misconduct. Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right.

*Id.* at 816-17. *Pearson* modified the court's prior decision in *Saucier* v. *Katz*, 533 U.S. 194, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001), by ruling that the Court may look to the second element of the test for qualified immunity first.

Plaintiff cannot demonstrate that any right at issue was "clearly established." In *Saucier*, the Court stressed that whether a right was clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201. In order to assess whether a right is clearly established in a particular case, the Court should determine "whether it would be clear to a reasonable [defendant] that his conduct was unlawful in the situation he

confronted." *Id.* at 202. Therefore, "[i]f the law did not put the [defendant] on notice that his conduct would be clearly unlawful," qualified immunity shall be granted. *Id.* The Supreme Court has also held that the "contours of [such a] right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987).

In Plaintiff's Complaint, there is no claim that Moving Defendant is a physician or psychiatrist, or that Plaintiff asked Moving Defendant for a psychiatric evaluation. Plaintiff does allege that such an evaluation was provided. Accordingly, there are no facts to suggest that Plaintiff should have known that his conduct would have violated any right, constitutional or otherwise.

As noted above, there also are insufficient facts pled to establish a constitutional violation by Moving Defendant with regard to the claims for deliberate indifference to medical needs, inhumane conditions of confinement, and excessive. In the absence of a constitutional violation, Moving Defendant must be entitled to qualified immunity for his actions. Accordingly, Plaintiff's claims against Moving Defendant must be dismissed under the doctrine of qualified immunity.

### e.    *Plaintiff's Complaint must be Dismissed as Barred by the Applicable Statute of Limitations*

As it is clear from the face of Plaintiff's Complaint that his claims are barred by the statute of limitations, the Complaint must be dismissed.  It is proper for the Court to dismiss time-barred claims on a Rule 12(b)(6) motion if it is clear on the face of the Complaint that the claims have not been brought in a timely manner. *See Jackman v. Smith*, 2007 U.S. App. LEXIS 26027, *4-5, fn. 3 (3rd Cir. November 7, 2007) (non-precedential opinion).  "The length of the statute of limitations for a § 1983 claim is governed by the personal injury tort law of the state where the cause of action arose.  The statute of limitations for a § 1983 claim arising in Pennsylvania is two years." *Kach v. Hose*, 589 F.3d 626, 634 (3rd Cir. 2009) (*citing* 42 Pa.C.S. § 5524(2)) (*internal citations omitted*).  The statutory period begins to run:

> from the time when the Plaintiff knows or has reason to know of the injury which is the basis of the section 1983 action.  Accrual occurs as soon as a potential claimant either is aware, or should be aware, of the existence and source of injury, not when the potential claimant knows or should know that the injury constitutes a legal wrong.

*Davis v. Malitzki*, 2009 U.S. Dist. LEXIS 100204, *15 (E.D. Pa. October 27, 2009). In this matter, Plaintiff's Complaint was filed on Tuesday, October 20, 2009.[3]    Accordingly, recovery for any damages arising out of the acts and/or

---

[3] October 19, 2009 was not a federal holiday under FED. R. CIV. P. 6(a)(4).

omissions of Moving Defendant that occurred prior to October 20, 2007 is time-barred.

In this matter, Plaintiff has alleged that he was incarcerated on April 18, 2007 (Exhibit "A", at ¶ 9) and placed in The Hole as punishment on October 18, 2007 (Exhibit "A", at ¶ 11).   Plaintiff further states (in the form of a legal conclusion) that the failure to provide psychiatric care was the cause of all misbehaviors that led to such punishment. (Exhibit "A", at ¶ 64).  As Plaintiff was placed in The Hole on October 18, 2007, it is clear that any alleged failure to provide psychiatric services must have occurred prior to this date.  Recovery for any such act or omission is plainly barred by the statute of limitations on the face of Plaintiff's Complaint.

In addition, Plaintiff alleges that the excessive force took place during the transfer to The Hole.  (Exhibit "A", at ¶ 15).  As this conduct, as well as any failure to train, also took place outside the limitations period, such claim must be dismissed.    Finally, with regard to Plaintiff's claim that "Warden Conrad promulgated a policy of using the inhumane conditions in The Hole as a cruel and unusual summary punishment" (Exhibit "A", at ¶ 73), such a policy must have been implemented prior to October 18, 2007, and Plaintiff's alleged injury (the transfer to The Hole) took place outside the relevant period of limitations.  At the time he was transferred to The Hole, Plaintiff was aware of the alleged injury.

Accordingly, the statute of limitations on his claim began to run on October 18, 2007 and expired two days before his Complaint was filed. Plaintiff fails to allege any acts or omissions by Moving Defendant that took place within the applicable limitations period. Accordingly, Plaintiff's entire action is time-barred and must be dismissed.

### f.     Plaintiff Failed to Exhaust His Administrative Remedies Pursuant to the Prisoner Litigation Reform Act.

As Plaintiff fails even to allege that he has exhausted his administrative remedies as to Moving Defendant under the Prisoner Litigation Reform Act (hereinafter "PLRA"), his claims must be dismissed. The PLRA applies to prisoners who are confined to a "jail, prison, or other correctional facility" and states that they must exhaust all administrative remedies offered before filing any actions. 42 U.S.C. § 1977e(a). Plaintiff claims to have been an inmate at the Northumberland County Prison at the time of the alleged incidents at issue. (Exhibit "A", at ¶¶ 9-10). Accordingly, he is subject to the requirements of the PLRA.

Exhaustion of all available administrative remedies is required and mandatory under the PLRA. *Woodford v. Ngo*, 548 U.S. 81, 85, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006); *Booth v. Churner*, 532 U.S. 731, 121 S. Ct. 1819, 149 L. Ed. 2d 958 (2001). Furthermore, the requirement applies to all inmate suits seeking redress for prison circumstances or occurrences, whether the suits involved

general circumstances or particular episodes, and whether the suits alleged excessive force, actual physical prison conditions, or some other alleged wrongdoing. *Correction Officer Porter v. Nussle*, 534 U.S. 516, 520, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002). This provides the agency an opportunity to redress any perceived wrongs and also offers efficiency in an attempt to resolve any issues prior to bringing suit in federal court. *Woodford*, at 88.

As the Supreme Court has stated, "[b]ecause exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims." *Id.* at 89. The Court further declared that requiring full exhaustion of all remedies "gives prisoners an effective incentive to make full use of the prison grievance process and accordingly provides prisons with a fair opportunity to correct their own errors." *Id.* at 84. This is particularly important in relation to state corrections systems because it is "difficult to imagine an activity in which a State has a stronger interest, or one that is more intricately bound up with state laws, regulations, and procedures, than the administration of its prisons." *Id.*, at 94, citing to *Preiser v. Rodriguez*, 411 U.S. 475, 491-492, 93 S. Ct. 1827, 36 L. Ed. 2d 439 (1973) (*overruled on other grounds*). If a prisoner does not fully exhaust the available administrative remedies, his claims must be dismissed. *Moscato v.*

*Federal Bureau of Prison*, 98 F.3d 757, 761-62 (3rd Cir. 1998). Plaintiff in this action has not pled any facts to demonstrate the steps he took to exhaust his administrative remedies under the PLRA. Accordingly, Plaintiff's claims must be dismissed.

## IV. <u>Conclusion</u>

In light of the foregoing, Moving Defendant respectfully requests that this Honorable Court grant his Motion to Dismiss Plaintiff's Complaint Pursuant to FED. R. CIV. P. 12(b)(6) with prejudice.

Respectfully submitted,

DOUGHERTY, LEVENTHAL & PRICE, LLP

By: _____
Sean P. McDonough, Esquire
Attorney for Moving Defendant
John N. Conrad
75 Glenmaura National Boulevard
Moosic, Pennsylvania
Phone:        (570) 347-1011
Fax:          (570) 347-7028
Email:        smcdonough@dlplaw.com

Date: